**Kelly R. PATTERSON, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 71A05–0903–CR–154.**

Court of Appeals of Indiana.

July 22, 2009.

---

---

Mark S. Lenyo, South Bend, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Janine Steck Huffman, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Kelly Patterson appeals her three Class D felony theft convictions and her seventy-one-year sentence for murder and three counts of theft. We affirm.

### Issues

Patterson raises three issues, which we reorder and restate as:

I.  whether there is sufficient evidence to support her Class D felony theft convictions;

II. whether the trial court abused its discretion when it sentenced her; and

III. whether her sentence is inappropriate.

### Facts

In 2007, Patterson and Denise Culp were involved in a romantic relationship. The couple lived with Culp's mother until June 2007. At some point, Culp began living with Brad Fulford, a family friend, and Patterson lived with Amber Flowers. Patterson and Fulford did not get along because Fulford helped supply Culp with cocaine. Patterson would go to Fulford's house at night while he was at work and leave before he returned in the morning.

On November 15, 2007, Patterson spent the night at Fulford's house with Culp. On the morning of November 16, 2007, Patterson remained in Culp's bedroom while Culp and Fulford took Culp's son to school. After they returned, Fulford and Culp went to the kitchen to use cocaine. At some point, Patterson appeared in the kitchen doorway with a gun. Patterson instructed Fulford to get up and go to the basement. As Fulford was walking toward the basement, he opened the back door. Patterson pulled him back into the house by his shirt. Patterson asked Fulford, "You like f* * * * * * my girl?" Tr. p. 539. Fulford responded that he was not "f* * * * * anyone." *Id.* Patterson and Fulford apparently struggled, and Patterson shot Fulford in the back of the head, killing him.

After Fulford was shot, Culp went to her room and continued to smoke cocaine. When she ran out of cocaine, she and Patterson took Fulford's car, used Fulford's ATM card to withdraw money, purchased more cocaine, and returned to Fulford's house. Around 11:00 p.m., the couple left Fulford's house. Culp took her son's belongings from the house, and Patterson took two duffle bags containing items from Fulford's safe. On the way to Flowers's house, Patterson threw the gun into a river. They went to Flowers's house, and stayed there until the next morning. They left Flowers's house in Fulford's car and stopped at Burger King, and then Patterson used Fulford's

ATM card to get money to buy more cocaine.

Eventually the couple checked into a hotel room. Culp called her mother, who came to the hotel room. Culp and Patterson explained what had happened to Culp's mother. Culp's mother reported the shooting to the police, and Culp and Patterson were apprehended at the hotel.

On November 20, 2007, the State charged Patterson with murder and three counts of Class D felony theft relating to Fulford's car, ATM card and money, and papers and coins. A jury found Patterson guilty as charged. The trial court sentenced Patterson to sixty-five years on the murder conviction and three years on each theft conviction. The trial court ordered one of the theft convictions to be served concurrently and the remaining charges to be served consecutively, for a total sentence of seventy-one years. Patterson now appeals.

## Analysis

### I. Sufficiency of Evidence

■ Patterson argues that there is insufficient evidence to support her theft convictions because the charging information alleged that she took property from Fulford, who was dead when the property was taken. She claims, "it was factually impossible to steal from Fulford as alleged by the State." Appellant's Br. p. 16. Patterson contends that because Fulford was dead, he did not own the property when it was stolen. Instead, she argues, the property was owned by his estate.[1]

Upon a challenge to the sufficiency of evidence to support a conviction, we do not reweigh the evidence or judge the credibility of the witnesses, and we respect the jury's exclusive province to weigh conflicting evidence. *McHenry v. State*, 820 N.E.2d 124, 126 (Ind.2005). We must consider only the probative evidence and reasonable inferences supporting the verdict. *Id.* If the probative evidence and reasonable inferences drawn therefrom could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt, we must affirm the conviction. *Id.*

"A person who knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use, commits theft, a Class D felony." Ind.Code § 35–43–4–2(a). " 'Person' means a human being, corporation, limited liability company, partnership, unincorporated association, or governmental entity." I.C. § 35–41–1–22(a).

We reject Patterson's argument that property cannot be stolen from a dead person. Our supreme court has affirmed a robbery conviction where the defendant shot and killed the victim before taking his property. *Robinson v. State*, 693 N.E.2d 548, 554 (Ind.1998). The *Robinson* court noted, "The spirit of our criminal law would not be fostered by a ruling that Robinson could not be convicted of robbing a man he had just killed." *Id.* at n.2. With that reasoning in mind, we hold that although he was dead, Fulford was still a human being capable of being stolen from. The State properly identified Fulford as the owner of the stolen property in the charging information and at trial. *Cf. Smith v. State*, 664 N.E.2d 758, 760 (Ind. Ct.App.1996) (holding that the personal representative of an estate could be convicted of theft from the estate because an estate was a person for purposes of the theft statute), *trans. denied.*

---

1. There is no indication that an estate had been opened at the time Patterson was charged.

## II. Abuse of Discretion

■ Patterson argues that the trial court abused its discretion in sentencing her when it failed to consider two mitigating factors.[2] We engage in a four-step process when evaluating a sentence. *Anglemyer v. State*, 868 N.E.2d 482, 491 (Ind. 2007). First, the trial court must issue a sentencing statement that includes "reasonably detailed reasons or circumstances for imposing a particular sentence." *Id.* Second, the reasons or omission of reasons given for choosing a sentence are reviewable on appeal for an abuse of discretion. *Id.* Third, the weight given to those reasons, i.e. to particular aggravators or mitigators, is not subject to appellate review. *Id.* Fourth, the merits of a particular sentence are reviewable on appeal for appropriateness under Indiana Appellate Rule 7(B). *Id.*

■ An abuse of discretion in identifying or not identifying aggravators and mitigators occurs if it is " 'clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom.' " *Anglemyer*, 868 N.E.2d at 490 (quoting *K.S. v. State*, 849 N.E.2d 538, 544 (Ind.2006)). Additionally, an abuse of discretion occurs if the record does not support the reasons given for imposing a sentence, or the sentencing statement omits reasons that are clearly supported by the record and advanced for consideration, or the reasons given are improper as a matter of law. *Id.* at 490–91.

■ To the extent Patterson challenges the trial court's weighing of the aggravators and mitigators, such a claim is not subject to appellate review. *See Anglemyer*, 868 N.E.2d at 491. Patterson also claims that the trial court erred in not considering two mitigators—her employment and troubled childhood. On rehearing in *Anglemyer v. State*, 875 N.E.2d 218, 220–21 (Ind.2007), our supreme court acknowledged, "an allegation that the trial court failed to identify or find a mitigating factor requires the defendant to establish that the mitigating evidence is not only supported by the record but also that the mitigating evidence is significant."

■ Although the record supports Patterson's assertions that she had two jobs at the time of the offense and that she had a troubled childhood, Patterson has not established that the trial court overlooked significant mitigators. Patterson had started one of the jobs in October 2007, shortly before the crime, and there are no details regarding the second job at McDonald's. Without more, Patterson has not established that her employment is a significant mitigator. As for her childhood, Patterson reported that her mother was an alcoholic and that she was physically and mentally abused. Our supreme court has "consistently held that evidence of a difficult childhood warrants little, if any, mitigating weight." *Ritchie v. State*, 875 N.E.2d 706, 725 (Ind.2007). Accordingly, Patterson has not established that the trial court overlooked a significant mitigator. The trial court did not abuse its discretion in sentencing Patterson.

## III. Appropriateness of Sentence

■ Patterson also argues that her sentence is inappropriate. We may revise a sentence that is inappropriate in light of the nature of the offense and the character of the offender. *See* Ind. Appellate Rule 7(B). Although Indiana Appellate Rule 7(B) does not require us to be "extremely"

---

**2.** To the extent Patterson argues she should not have received the maximum sentence, she did not receive the maximum sentence. Patterson faced a possible seventy-four-year sentence and received a seventy-one-year sentence.

deferential to a trial court's sentencing decision, we still must give due consideration to that decision. *Rutherford v. State,* 866 N.E.2d 867, 873 (Ind.Ct.App.2007). We also understand and recognize the unique perspective a trial court brings to its sentencing decisions. *Id.* "Additionally, a defendant bears the burden of persuading the appellate court that his or her sentence is inappropriate." *Id.* Patterson has not met this burden.

Although Patterson makes no argument regarding the nature of the offense, we address her argument on the merits. *See Williams v. State,* 891 N.E.2d 621, 633 (Ind.Ct.App.2008) (choosing to address the merits of an appropriateness claim even though the appellant did not make cogent arguments regarding both the nature of the offense and the character of the offender). Patterson hid in Fulford's house, initiated an encounter with him, and used his gun to shoot him in the back of the head. Instead of seeking medical help for Fulford, Patterson and Culp remained in Fulford's house for several hours, and eventually Patterson stole the contents of Fulford's safe and took his car. Patterson and Culp then used his ATM card to withdraw cash and purchase drugs. Patterson threw the gun into a river and implicated someone else in the crime. The nature of this offense is egregious.

As for her character, Patterson points to her employment status at the time of the offense, her troubled childhood, and her non-violent criminal history. Notwithstanding her employment, Patterson shot Fulford and then stole from him. As for her childhood, although it is unfortunate that she suffered as a child, it simply does not explain this outrageous conduct. Regarding her criminal history, in 2006 Patterson was convicted of felony grand theft of a motor vehicle and her probation was revoked within months of her conviction. In 2007, she was convicted of criminal conversion. In addition to other arrests, Patterson failed to appear on driving while suspended charges and a bench warrant was issued. Patterson has not convinced us she was able to conduct herself within the confines of the law. She has not established that the nature of the offense and her character render the seventy-one year sentence inappropriate.

## Conclusion

There is sufficient evidence to support Patterson's theft convictions. Patterson has not established that the trial court abused its discretion in sentencing her or that her sentence is inappropriate. We affirm.

Affirmed.

BAKER, C.J., and MAY, J., concur.